CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED
AUG 17 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br>    Plaintiff, | |
| v. | Civil Action No. 2:05-cv-00029<br><br>**MEMORANDUM OPINION** |
| J.A.D. COAL COMPANY, INC.,<br>THE NEW COAL COMPANY, INC.,<br>FEDERAL INSURANCE COMPANY,<br>LIBERTY MUTUAL INSURANCE<br>    COMPANY,<br>ACCEPTANCE INDEMNITY<br>    INSURANCE COMPANY,<br>    Defendants. | |
| | By: Hon. James C. Turk<br>Senior United States District Court Judge |

The plaintiff, Allstate Insurance Company ("Allstate"), filed a complaint for declaratory judgment pursuant to 28 U.S.C. § 2201 in federal court against the defendants, J.A.D. Coal Company ("J.A.D."), The New Coal Company ("New Coal"), Federal Insurance Company, Liberty Mutual Insurance Company, and Acceptance Indemnity Insurance Company, arising from a claim for coverage on a policy of business automobile insurance issued by Allstate to J.A.D.. This matter is before the Court on cross motions for summary judgment filed by defendants' J.A.D. and New Coal and plaintiff Allstate pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Court heard oral arguments on August 7, 2006. After consideration of the merits of the pleadings and arguments, the Court will grant plaintiff's motion for summary judgment and deny defendants' motion for summary judgment. The defendants, Federal

1

Insurance Company, Liberty Mutual Insurance Company, and Acceptance Indemnity Insurance Company, have indicated that they have no interest in the outcome of this litigation.

I.

The facts in this case are not in dispute. Allstate issued a policy of business automobile insurance to J.A.D., Policy No. 04819846 ("the policy"), with effective dates of November 10, 2003 to November 10, 2004. The policy provided $1,000,000.00 of liability coverage to the insured with respect to covered autos. J.A.D. was the only named insured. Under the "LIABILITY INSURANCE" provision of the policy, the insuring agreement states, "[w]e will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto."

The other pertinent portions of the policy determine what constitutes a "covered auto." The relevant portion of Part II of the policy states that covered autos are "NON-OWNED AUTOS" defined as "autos, not owned, leased, hired or borrowed by J.A.D. Coal Company, Inc.," but which are, "used in connection with your [J.A.D.'s] business."

The underlying tort action, arising from a vehicular accident, has recently reached a settlement agreement. The facts relating to the underlying lawsuit are as follows. On March 13, 2004, J.A.D. owned a coal loading facility that was leased to and operated by New Coal. New Coal sold coal to J. Hall, Inc. ("J. Hall"). J. Hall hired Walker Transportation, Inc. ("Walker") to haul the coal from New Coal's facility to a location designated by J. Hall.

On the date of the accident, Raymond G. Walker, an employee of Jamie Walker, doing business as Walker Trucking, drove a tractor trailer (owned by Jaime Walker) to the New Coal

2

loading facility. The truck was not owned, leased, borrowed, rented or hired by J.A.D. or New Coal. Nor was the truck used with New Coal or J.A.D.'s permission or pursuant to their instruction. The trailer was loaded with coal by either Lisa Sutton, an employee of New Coal, or Jeff Dean, an employee of J.A.D. Sutton and Dean were the only loader operators present at the New Coal facility but neither party can affirmatively determine who loaded the coal.

Raymond Walker was driving the tractor and loaded trailer from the loading facility to the destination specified by J. Hall, and was over eighty miles from the loading facility, when it collided with a vehicle being operated by Glenn Stanfill and in which his son, Joshua Stanfill, was riding as a passenger. As a result of the collision, Glenn Stanfill died and Joshua Stanfill was injured. Janet Stanfill, the personal representative of Glenn Stanfill's estate, and Joshua Stanfill (hereinafter "the Stanfills") filed the underlying tort action seeking damages resulting from the accident.

The Stanfills alleged in their complaint that Walker was operating the tractor and an overloaded trailer at an excessive rate of speed when he lost control of the tractor trailer resulting in the collision. The Stanfills further alleged that J.A.D., New Coal, Sutton, and Dean overloaded the trailer and knew or should have known of the high likelihood that the trailer would overturn while in transit. The Stanfills also alleged that, *inter alia*, New Coal, J.A.D., Jeff Dean and Lisa Sutton were negligent *per se* in violating certain Kentucky statutes.

Allstate maintains that it has no duty to defend either J.A.D. or New Coal, nor pay any sum that J.A.D. or New Coal might be liable for as a result of this accident.

II.

Upon motion for summary judgment, the Court must view the facts, and inferences to be

3

drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 465 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.E.2d 538 (1986); Nguyen v. CNA Corp., 44 F.3d 234, 236-7 (4th Cir. 1995). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Fed.R.Civ.P. 56. Instead, the non-moving party must respond by affidavits or otherwise present specific facts showing that there is a genuine issue of dispute fact for trial. Id. If the non-moving party fails to show a genuine issue of fact, summary judgment, if appropriate, may be entered against the non-moving party. See Celotex Corp. V. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

III.

Federal courts sitting pursuant to their diversity jurisdiction must apply the law of the forum state. Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817 (1938). Under Virginia law, "a contract is made when the last act to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to the insured." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 636 (4th Cir. 2005), *cert. denied*, 126 S.Ct. 568 (2005). Here, the policy was delivered in Virginia, and Virginia law applies.

4

IV.

"Under Virginia law, an insurer's obligation to defend an action 'depends on comparison of the policy language with the underlying complaint to determine whether the claims alleged [in the complaint] are covered by the policy.'" Am. Online, Inc. v. St. Paul Mercury Ins. Co., 347 F.3d 89, 93 (4th Cir. 2003) (quoting Superperformance Int'l, Inc. v. Hartford Cas. Ins. Co., 332 F.3d 215, 220 (4th Cir. 2003). A policy holder bears the burden of proving that the policyholder's conduct is covered by the policy. Res. Bankshares Corp., 407 F.3d at 636 (citing Furrow v. State Farm Mut. Auto. Ins. Co., 237 Va. 77, 375 S.E.2d 738, 740 (1989). Yet this burden is not especially onerous since the insurer must defend unless "it clearly appears from the initial pleading the insurer would not be liable under the policy contract for *any* judgment based upon the allegations." Res. Bankshares Corp., 407 F.3d at 636 (citing Reisen v. Aetna Life and Cas. Co., 225 Va. 327, 302 S.E.2d 529, 531 (1983). The duty to defend is broader than the duty to indemnify because "it arises whenever the complaint alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 397 S.E.2d 100, 102 (1990); Reisen, 302 S.E.2d at 531. "However, if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, 'it has no duty even to defend.'" Brenner at 102 (quoting Travelers Indem. Co. v. Obenshain, 219 Va. 44, 245 S.E.2d 247, 249 (1978)).

Allstate denies that it owes J.A.D. or New Coal any duty to defend or to indemnify because the tractor and trailer being operated by Walker is not a "covered auto" as required in the policy and contends that New Coal is not even an insured under the policy.

J.A.D. and New Coal contend that J.A.D. is entitled to summary judgment on both issues

5

and that New Coal is entitled to partial summary judgment on the duty to defend issue. They claim that the operative language of the policy is ambiguous, which ambiguity must be construed against the insurer and in favor of coverage. The defendants' contend that the policy language is susceptible to two reasonable interpretations. They also maintain that it is relevant that Allstate used the similar phrase, "in your business," in the very next paragraph thus illustrating that Allstate had the option to require a more proximate nexus for coverage in the previous paragraph at issue.

In Virginia, "an insurance policy is a contract to be construed in accordance with the principles applicable to all contracts." Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 419 (4th Cir. 2004) (citing Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co., 240 Va. 457, 397 S.E.2d 876, 877 (1990)). As with other contracts, when interpreting a policy, courts "must not strain to find ambiguities" or "examine certain specific words or provisions in a vacuum, apart from the policy as a whole." Res. Bankshares Corp., 407 F.3d at 636 (citing Salzi v. Virginia Farm Bureau Mut. Ins. Co., 263 Va. 52, 556 S.E.2d 758, 760 (2002) ("'[A]s in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction.'") (quoting Graphic Arts, 397 S.E.2d at 877). See e.g., TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 263 Va.116, 557 S.E.2d 199 (2002); First Am. Title Ins. Co. v. Seaboard Sav. & Loan Ass'n, 227 Va. 379, 315 S.E.2d 842, 845 (1984). A policy provision is ambiguous when, "in context, it is capable of more than one reasonable meaning." Res. Bankshares Corp., 407 F.3d at 636. See Hill v. State Farm Mut. Auto. Ins. Co., 237 Va. 148, 375 S.E.2d 727, 730, 5 Va. Law Rep. 1510 (1989); Caldwell v. Transp. Ins. Co., 234 Va. 639, 364 S.E.2d 1, 3 (1988) (citing St. Paul Ins. v. Nusbaum Co., 227 Va. 407, 316

6

S.E.2d 734 (1984). Similarly, reasonable exclusions to coverage, when stated in the policy in clear and unambiguous language that is clearly applicable to a specific situation at hand, will be enforced. Federal Ins. Co. v. New Coal Co., 415 F.Supp. 2d 647 (W.D. Va. 2006) (citing Transcon. Ins. Co. v. RBMW, Inc., 262 Va. 502, 551 S.E.2d 313, 318 (2001)). Where exclusionary provisions are ambiguous, they will be interpreted in a manner that provides coverage. Id. (citing Lower Chesapeake Assocs. v. Valley Forge Ins. Co., 260 Va. 77, 532 S.E.2d 325, 331-32 (2000)).

In Pham v. Hartford Fire Ins. Co., 419 F.3d 286, 290 (4th Cir. 2005) the court analyzed the phrase, "in your business or your personal affairs," found in Part IV(D) of the Broad Form Endorsement amendment to the automobile insurance policy at issue in that case. The court determined that this language was "clear and unambiguous." Id. The phrase, "in connection with your business," used in the Allstate policy at issue is similar to the phrase considered by the Pham court. In fact, the court specifically "note[d] the similar and consistent wording" between the two phrases and stated that "the result is the same." Id. Thus, contrary to the contentions of the defendants and despite the inconsequential factual differences between the two cases, this Court finds that the phrase "in connection with your business" is not ambiguous. Even if the Pham case, as defense counsel suggests, is distinguishable from the current case, the Court's analysis would not change because the Court finds that the phrase "in connection with your business" is unambiguous on the face of the Allstate insurance policy.

A.

Since it has been determined that the operative phrase is not ambiguous, the sole issue, then, is whether the vehicle falls within the non-owned auto exception of the policy. Several

7

other courts have confronted the interpretation of the phrase, "in connection with your business," and have looked to two factors to determine the meaning. The first factor is the extent to which the vehicle at issue was used in the course and scope of the insured's business. U. S. Fid. & Guar. Co. v. Sanders, No. Civ.A. 5:03-0702, 2006 WL 771914, *3 (S.D.W. Va March 30, 2006) (citing Gore v. State Farm Mut. Ins. Co., 649 So.2d 162, 166 (La. Ct. App. 1995)) (The "policy language requires that the accident occur while the 'nonowned auto' is being used in the course and scope of the insured's business or personal affairs"); Adams v. Thomason, 753 So.2d 416, 421 (La. Ct. App. 2000).[1] In Adams, a farmer's employee was driving the farmer's truck and pulling a load of the farmer's cotton in a trailer owned by the named insured. Adams, 735 So.2d at 418, 420. The insured was in the cotton gin business. Id. The court concluded that the farmer's employee was acting in the course and scope of the farmer's business and not of the insured. Id. at 421. Notably, the fact that the driver was employed by an entity other than the insured led the court to conclude that the vehicle's use was not "in connection with" the insured's business. Id.

Similarly, in this case, the driver of the tractor and trailer was employed by Walker, not J.A.D. or New Coal. Walker did not have a contract or agreement with JA.D. or New Coal but was hired by J. Hall to transport the coal. These facts indicate that the Walker tractor and trailer involved in the collision at issue was being used in the course and scope of Walker's business,

---

[1] Note that many courts have found that the phrases, "in your business" or "in connection with your business," are equivalent to the phrase, "scope of employment." See, e.g., O'Shea v. Welch, 101 Fed. Appx. 800, 805, 2004 WL 1376643 (10th Cir. 2004) (citing Wasau Underwriters Ins. Co. v. Baillie, 281 F. Supp. 2d 1307, 1316 (M.D. Fla. 2002), aff'd, 82 Fed. Appx. 218 (11th Cir. 2003); Lawler v. Fireman's Fund Ins. Co., 163 F. Supp. 2d 841, 852-53 (N.D. Ohio 2001), aff'd, 322 F.3d 900 (6th Cir. 2003). Therefore, an analysis under Sanders and Adams is appropriate.

8

not the business of J.A.D. or New Coal. The mere fact that J.Hall, through Walker, had purchased the coal present in the truck at the time that it was involved in the collision from New Coal is insufficient to find that the truck was used in the course and scope of New Coal's or J.A.D's business.

B.

The second factor in determining whether use was "in connection with" the insured's business is the "extent to which an insured held or exerted a right of control over the vehicle and its driver." Sanders, 2006 WL 771914, *3 (citing Liberty Mut. Fire Ins. Co. v. Canal Ins. Co., 1997 WL 786760, *7 (N.D.Miss. Nov. 13, 1997); Adams, 753 So.2d at 421. In Liberty Mutual, a lumber company held an insurance policy with language nearly identical to J.A.D.'s Allstate policy. Liberty Mutual, 1997 WL 786760, *7. The lumber company made an oral contract for the hauling of wood with a trucking company. Id. The lumber company paid the trucking company a fee per ton for hauling and did not exert any control over the truck's operation other than to indicate where the lumber should be picked up and dropped off. Id. at *1-2. The trucking company's employee was involved in an accident which resulted in the death of the driver of another vehicle. Id. at *2. A federal district court held that the truck involved was not used "in connection with" the lumber company's business. Id. at *7. That court looked primarily to the lumber company's lack of control over any aspect of the truck's operation other than pickup and drop off point. Id. (citing Canal Ins. Co. v. T.L. James & Co., Inc., 911 F. Supp. 225, 228 (S.D. Miss. 1995) (stating that "'the term "using" . . . while not necessarily limited to actual physical operation of the vehicle (i.e., driving), is appropriately read as requiring more than just the ability to direct and control the vehicle'"). The Liberty Mutual court continued by

9

stating that it is "unreasonable to attach . . . [a] broad interpretation to this provision of the Liberty Mutual policy, and such an interpretation would lead to quite absurd results." Id.

The facts of this case illustrate that J.A.D. and New Coal are even further removed from controlling the actions of the trucking company than the lumber company in Liberty Mutual. Neither company was involved in a contract with Walker trucking as was the case in Liberty Mutual. Raymond G. Walker, the driver of the vehicle, was employed by Walker Trucking, Inc., not J.A.D. or New Coal. Neither J.A.D. nor New Coal had the ability or authority to direct the truck's operation or to control the actions of the driver. New Coal and J.A.D. had no right to control the actions of Walker after he left the coal loading facility some 5 hours and 80 miles from the accident scene. No control was exerted by J.A.D. or New Coal over even the drop off point of the goods as was the case in Liberty Mutual. The coal was sold to Walker Trucking on the account of J. Hall for the purpose of Walker Trucking hauling this coal to Ohio and selling it to a J. Hall customer. The lumber being hauled in the Liberty Mutual case was for the customers of the lumber company who had contracted with the trucking company. Sale of the coal was completed when Walker left the loading facility. Subsequent to the accident, J. Hall was invoiced by New Coal for the coal that was in the Walker truck at the time of the accident and J. Hall paid the New Coal invoices.

C.

The defendants assert that the allegation by the Stanfills that a New Coal employee or, in the alternative, a J.A.D. employee negligently overloaded the coal truck is sufficient to connect

10

J.A.D.'s business to the use to which the coal truck was being put at the time of the accident.[2] Merely because the Stanfills may have been able to state a claim against J.A.D. for overloading Walker's truck does not mean that the Walker truck was being used in connection with J.A.D.'s business at the time of the accident. The policy is an automobile policy, not a comprehensive general liability policy. Moreover, the mere fact that New Coal's coal was in Walker's truck at the time of the accident is insufficient to satisfy the plain language of the policy and Virginia law.[3] This Court agrees with the aforementioned authorities in determining that such a broad interpretation of the phrase, "in connection with your business," would lead to absurd results. If that logic were to be carried to the extreme, a retail establishment would be liable for the tortious actions of any customer who had recently purchased merchandise from the store. Similarly, simply because J.A.D. owned the loading facility and equipment but leased the facility and equipment to New Coal, New Coal is a subsidiary of J.A.D., and J.A.D.'s articles of incorporation state that the purposes of the corporation include loading and hauling coal, does not establish a sufficient connection.

Based on all of these factors and the aforementioned persuasive authority, this Court finds that the Walker vehicle was not being used in connection with J.A.D.'s business at the time of the accident. Thus, it does not qualify as a non-owned auto under the policy. J.A.D. is a named

---

[2]The defendants' contend that because the interests of the two companies "so overlapped, that the business of New Coal, is and was at the operative time, also the business of J.A.D.," it would not matter which employee loaded the truck. The Court notes that the companies were and are separate corporate entities with different business, assets, and employees. They also obtained separate insurance. Regardless, the operative language of the policy does not grant coverage to J.A.D. much less New Coal so an in-depth analysis on the subject is irrelevant.

[3]This Court does not find the defendants' argument that New Coal still retained the possibility of rights to the coal under the remedy of reclamation to be sufficient to establish the requisite business connection.

insured, but the accident at issue did not involve a covered vehicle, so J.A.D. has no coverage. This Court does not reach the issue of whether or not New Coal qualifies as an "insured" under the policy because the fact that the Walker truck does not meet the definition of a "covered auto" under the terms of the policy resolves the issue as moot. Allstate does not owe a duty to defend or indemnify in the instant matter because the policy does not provide coverage to J.A.D. or New Coal for the Kentucky suit. Where there is no coverage, there is not duty to defend. See Travelers Indem. Co. v. Obenshain, 219 Va. 44, 47, 245 S.E.2d 247, 249 (1978); See also, Morrow Corp. v. Harleysville Mut. Ins. Co., 110 F.Supp.2d 441, 446 (E.D. Va. 2000) (finding that an insurer's duty to defend is broader than its duty to indemnify). Moreover, the policy itself states that, "we have no duty to defend suits for bodily injury or property damage not covered by this policy." Thus, under the law and the language of the policy, there is no duty to defend or indemnify where there is no coverage.

V.

For the reasons stated above, the Court will grant plaintiff's motion for summary judgment and deny defendants' motion for summary judgment.

**ENTER:** This 16th day of August, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE